## Long Estate

*J. H. Ward Hinkson* and *William Charles Hogg, Jr.,* for accountants.

*Louis A. Bloom,* guardian and trustee ad litem, p. p., for exceptant.

VAN RODEN, P. J., July 15, 1948.—On August 18, 1945, Charles B. Long and Gertrude H. Long, his wife, entered into a written agreement for the purchase of premises No. 1 Jefferson Street, Cape May, N. J., from George B. Moore and Edith Moore, his wife, for the price of $15,000, of which $1,500 was deposited as hand money and the balance of $13,500 to be paid at the time of settlement. The settlement date specified in the written agreement was December 1, 1945, but due to the illness of Mr. Long, the time was extended by mutual consent.

On January 28, 1946, Mr. Long died without having completed settlement for the purchase of the aforesaid property.

On March 21, 1946, decedent's executors paid to his widow the sum of $6,750, representing one half of the balance remaining due under said agreement, and she then paid the entire balance of the purchase price to the vendors and took title to the said real estate in her name alone.

Upon the filing of the first and final account of the executors, a guardian and trustee ad litem was appointed to represent certain minors as well as possible unborn and unascertained interests, and he has filed exceptions to the said payment by the executors to the widow.

The first argument advanced by the learned guardian and trustee ad litem is that the payment of any portion of the balance due on the purchase price, without an order of court directing and approving same, was improper and contrary to the provisions of sections 18(*a*) and 18(*b*) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §§611, 612, which confer upon the orphans' court exclusive jurisdiction over suits for specific performance of written contracts for sale or purchase of real estate by decedents. This conten-

tion must be rejected for two reasons: the statute by its terms applies only to contracts involving real estate *in this Commonwealth,* whereas the property in question is located in New Jersey; and, further, the payment involved does not represent a true action for specific performance but is rather a claim for contribution as between decedent's estate and the widow, both being liable to the vendors for the entire purchase price.

Proceeding to a consideration of the merits of the controversy, the trustee and guardian ad litem has stated in his brief that "there are no reported decisions in this State or in any other jurisdiction which authorize the executors of a decedent's estate to voluntarily pay unto the widow any portion of the purchase price of real estate, title to which is taken in the name of the widow alone after the death of the husband, even though both husband and wife entered into the agreement for the purchase of such real estate". Although such statement appears to be correct, it likewise appears that there is no reported decisions holding such payment improper. The case being one of first impression, resort must be had to established legal principles and analogies in order to reach a proper and just determination of this question.

The effect to be given to an agreement for the purchase of land depends upon the law of the State where the land is: Coral Gables, Inc., v. Jones et al., Exrs., 323 Pa. 425, 428 (1936). In New Jersey, a vendee under an executory contract of sale of land has an equitable interest in the land: People's Water Co. v. City of Millville, 95 N. J. Eq. 732, 123 Atl. 747 (1924); Martindell v. Fiduciary Counsel, Inc., 133 N. J. Eq. 408, 30 A. (2d) 281 (1943). A transfer to husband and wife in New Jersey, in the absence of any countervailing language in the instrument of transfer, operates to vest title to them as tenants by the entireties: Buttlar v. Rosenblath, 42 N. J. Eq. 651, 9 Atl. 695 (1887). Where husband and wife own an interest in

real estate as tenants by the entireties, the death of one spouse terminates his interest in the property and the entire estate then remains to the surviving spouse: In re Staiger's Estate, 104 N. J. Eq. 149, 144 Atl. 619 (1929).

Where tenancies by the entireties are recognized, a contract for the purchase of realty by husband and wife creates an equitable estate by the entireties in them: Hernandez v. Prieto, 349 Mo. 658, 162 S. W. (2d) 829 (1942). Accordingly, when decedent and his wife entered into the written agreement for the purchase of the Cape May property, they became tenants by the entireties in the equitable interest in said real estate.

It is well recognized that a tenant by the entirety is seized "par tout et non per my": C. I. T. Corporation v. Flint et al., 333 Pa. 350, 355 (1939). A tenant by the entirety does not gain any additional or increased estate by reason of the death of the other tenant by the entirety, since the presumption of law is that the surviving tenant by the entirety was always seized of the entire estate. Accordingly, in the instant case, the decedent's death did not increase the widow's interest in the real estate, but it did extinguish the decedent's interest therein. As sole equitable owner of the premises after the death of her husband, the widow was entitled to have legal title taken in her name alone.

With regard to the liability for payment of the remaining balance of purchase price, it is fairly well settled that the vendors could have maintained an action against either the widow or the decedent's estate for the entire unpaid balance. The concept of tenancy by the entireties is applicable only to the holding of property; it does not characterize obligations of both husband and wife. Cf. Northampton Brewery Corp. v. Lande, 138 Pa. Superior Ct. 235, 239 (1939). The promise to pay the balance of purchase price created a *joint* obligation on the part of the decedent and his wife, and each person bound by a joint promise is bound

for the whole performance thereof: A. L. I. Restatement of the Law of Contracts, §117.

The nearest analogy appears to be the case where husband and wife hold property as tenants by entireties, subject to a mortgage executed by both. In such case, the law of New Jersey holds that the widow is not entitled to *exoneration* of the entire mortgage deed out of the estate of her deceased husband: In re Staiger's Estate, supra; Campbell v. Campbell et al., 140 N. J. Eq. 144, 53 A. (2d) 630 (1947). But if the widow, as surviving tenant by the entirety, discharges joint obligations incurred in connection with the property, she is entitled to *contribution*: Nobile v. Barletta, 109 N. J. Eq. 119, 156 Atl. 483 (1931). This also appears to be the law in Pennsylvania. In Kershaw Estate, 352 Pa. 205, 207 (1945), it was held that in computing the clear value of a decedent's estate for inheritance tax purposes, there may be deducted from the gross assets one half of the unpaid amount of a bond and mortgage against a property which had been owned by the decedent and his wife as tenants by the entireties and had passed to her by survivorship. As stated by Mr. Justice Stern (p. 207):

"Prima facie the payment of an indebtedness by one of two or more joint obligors is for the benefit of all, and the one making the payment is therefore entitled to contribution from the others. Hence, if collection on this bond were made from the estate, a right of contribution would automatically arise against the widow; if collection were made from the widow, she would have a similar right of contribution against the estate; therefore the ultimate liability of the estate is only for one half of the indebtedness."

In Cunningham v. Cunningham et al., 158 Md. 372, 148 Atl. 444 (1930), it was held that where husband and wife both incurred liability on a purchase money mortgage on land which they acquired as tenants by entireties, the wife had a right of proportionate contribu-

tion which she could assert against her husband's estate.

There does not appear to be any logical distinction between liability for unpaid purchase price imposed by the agreement of sale and a similar liability imposed by a purchase money mortgage. In the instant case, if the decedent had completed settlement prior to his death, and the parties had executed a purchase money mortgage, his estate would have been liable for one half the indebtedness. If he had completed purchase by payment of the entire consideration in cash, the wife would have owned the property outright upon his death. Accordingly, decedent's failure to complete the settlement prior to his death has not benefited the widow and has very possibly caused her to suffer loss to the extent that she has been required to pay part of the purchase price out of her own funds. Thus, although the payment to the widow of one half the balance due on the purchase price may superficially appear to be a voluntary donation to her by the executors for which the estate received no benefit, a careful analysis reveals that the payment was merely in discharge of a valid obligation of the decedent's estate to make contribution to the widow for joint obligations discharged by her.

The fact that the executors paid the money to the widow before settlement, instead of requiring her to complete settlement with her own funds and then make formal demand for contribution, does not affect the legal situation. In either event, the payment by the widow to the vendors extinguished a legal liability of the decedent to the vendors, and payment by the executors to the widow of the proportionate share of such indebtedness was entirely proper.

Accordingly, the exceptions filed by the guardian and trustee ad litem to the account of the executors are hereby dismissed.