The Borough of Baldwin and The Borough of Pleasant Hills, Appellants, *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Appellee.

South Park Township Board of Supervisors, Appellant, *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Appellee.

Argued September 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate.

*John R. Luke,* with him *Luke and Dempsey,* for appellant, Borough of Baldwin.

*Henry E. Rea, Jr.,* with him *Brandt, McManus, Brandt & Malone,* for appellant, Borough of Pleasant Hills.

*John R. McGinley,* with him *Grogan, Graffam & McGinley,* for appellant, Pleasant Hills Authority.

*John F. McGinty,* with him *Smiley & McGinty,* for appellant, South Park Township.

*Thomas M. Burke,* Special Assistant Attorney General, with him *Marvin A. Fein,* for appellee.

OPINION BY JUDGE BLATT, December 27, 1974:

This is an appeal from an order of the Environmental Hearing Board (EHB), dated November 29, 1973, revoking a supersedeas granted to each of the municipal appellants on July 18, 1973.

The appellant Boroughs of Baldwin and Pleasant Hills, and the appellant Township of South Park (municipalities) are local government subdivisions located in the southwestern part of Allegheny County. In 1957, the Pleasant Hills Authority was formed to provide a sewage disposal plant for portions of these

municipalities, and it now serves approximately 8,000 homes in the area.

On June 20, 1973 the Department of Environmental Resources (DER) issued orders to each of the municipalities reciting findings that raw sewage was occasionally by-passing the Pleasant Hills Authority plant and was polluting Lick Run, a water of the Commonwealth. This pollution was allegedly caused by the infiltration of surface and storm water into the sanitary sewer system during periods of heavy rainfall, when the resultant overload in the system required the Authority to open its by-pass gates and permit the excess water and raw sewage to flow, untreated, into Lick Run. To remedy this situation, the DER issued, without prior notice or opportunity for a hearing, an order which prohibited the municipalities from granting any new building permits, and it further directed that appropriate steps be taken to eliminate the excess infiltration. Upon receipt of these orders, the municipalities filed timely appeals and petitioned the EHB for supersedeas. A hearing was held on the petition for supersedeas, and, on July 18, 1973, the EHB granted the petitioners' request and permitted the issuance of a specific number of building permits up to November 19, 1973.[1] In addition, the order of the supersedeas di-

---

[1] The order is set forth below, in its entirety:

"The Supersedeas requested by South Park Township (South Park), Pleasant Hills Borough (Pleasant Hills), and Baldwin Borough (Baldwin), from the sewer ban provision of the Order of the Department of Environmental Resources (Department), dated June 20, 1973, is hereby granted, subject to the following conditions and limitations:

"(1) Within the next four months, specifically, between the date of this Order and November 19, 1973, (A) Baldwin shall grant a maximum of thirty (30) building permits, for building projects requiring sewer connections, (B) Pleasant Hills shall grant a maximum of fifty (50) building permits for building projects requiring sewer connections, and (C) South Park shall grant a

rected the municipalities to submit information showing how the infiltration would be remedied by the date set for hearing the merits of the appeal. This date, November 19, 1973, passed without a hearing,[2] and, on November 29, 1973, the EHB issued again without notice and without an opportunity for hearing, another order revoking the July 18 supersedeas. The municipalities have now appealed to this Court from both the June 20, 1973 DER order and the November 29, 1973 EHB order.

---

maximum of two hundred (200) building permits for building projects requiring sewer connections.

"(2) Baldwin and Pleasant Hills shall expeditiously undertake to insure that all sources of storm water infiltration—including in particular connections of roof drains and/or storm sewers into the sanitary sewer system—are found and disconnected, as called for by the Order appealed from within four (4) months of the date of this Order, specifically, by November 19, 1973. Priority shall be given to areas of the service area from which rain water inflows now cause basements to flood; inflows from such areas shall be terminated by September 28, 1973.

"(3) Evidence in written form, including calculations, projected dates of legal actions, and supporting data, shall be submitted to this Board and to the Department, by September 5, 1973, that the actions taken by Baldwin and Pleasant Hills will be effective to terminate the rain water inflow problem by November 19, 1973. If the evidence submitted does not show that the rain water infiltration problem will be solved sufficiently to terminate hydraulic overloading of the Pleasant Hills Authority sewage treatment plant by November 19, 1973, then this Supersedeas may either be discontinued, or a bond required in an amount to be determined at that time.

"There shall be a hearing on the merits on November 19, 1973, at 9:30 a.m., at a place to be set in the future.

"Environmental Hearing Board, Robert Broughton, Chairman."

[2] A hearing on that order was allegedly continued until December 18, at the request of the municipalities, though the record itself does not reveal the reasons for this delay. The December hearing was stayed as a result of the current appeal and, therefore, a hearing on the merits of the June 20 order has yet to take place.

The municipalities claim first that the original order of June 20, 1973, having issued without a prior hearing, violates the due process clause of the United States and Pennsylvania Constitutions. Recently, we have re-iterated our position that due process does not require a hearing before the DER takes action to abate pollution. *Borough of Carlisle v. Department of Environmental Resources*, 16 Pa. Commonwealth Ct. 341, 330 A. 2d 293, (1974). But, in this case, we are not in a position even to consider this issue. The doctrine of exhaustion of administrative remedies requires that where an administrative remedy is provided by statute, relief sought must exhaust this remedy before the courts will act. *Illinois Beef, L. & W.S., Inc. v. Henning*, 76 Dauph. 260 (1960). This process has not been completed here. The municipalities in the case at hand have still not availed themselves of an opportunity for a hearing before the EHB. Until that hearing has been held and a final adjudication issues from that body, it would be premature for us to rule on questions concerning the DER order of June 20, 1973. We must dismiss, therefore, that aspect of the present appeal.

The municipalities make the same due process argument in their appeal from the November 29, 1973 order which revoked the supersedeas without an opportunity for a prior hearing. We must dismiss this appeal as well, but for different reasons. The supersedeas of July 18, 1973 was merely an interlocutory order suspending the DER sewer connection ban for the specific period of time between July 18, 1973 and November 19, 1973. Obviously the supersedeas there expired by its own terms. The revocation order of November 29, 1973 was no more than a refusal to reinstate the supersedeas during the pendency of the original appeal from the DER order. That appeal is still alive and the rights of the parties have yet to be finally determined. The EHB's order of November 29, 1973, was not, therefore,

a final decree which determined the issues between the parties, and, consequently, it must likewise be considered an interlocutory order. As such, of course, it is also unappealable. *See Bethlehem Mines Corp. v. Department of Environmental Resources,* 13 Pa. Commonwealth Ct. 213, 318 A. 2d 373 (1974).

Accordingly, we enter the following

### ORDER

Now, December 27, 1974, the appellants' appeals are hereby dismissed and the record is remanded to the Environmental Hearing Board for further appropriate proceedings.