Walter T. Veerasingham, Plaintiff *v.* Ronald Sharp, Individually and as the Executive Director of the Juvenile Court Judges' Commission of the Commonwealth of Pennsylvania and Edward G. Biester, Jr., Attorney General of the Commonwealth of Pennsylvania, Defendants.

Argued June 1, 1981, before President Judge CRUMLISH and Judges ROGERS and WILLIAMS, JR., sitting as a panel of three.

*George M. Schroeder*, with him, *Lawrence L. Kinter, Hanes, Lucht, Kinter & Williams, and Walter T. Veerasingham*, for plaintiff.

*Kathleen F. McGrath*, Deputy Attorney General, with her, *Allan C. Warshaw*, Deputy Attorney General, and *Herbert L. Olivieri*, for defendants.

OPINION BY JUDGE WILLIAMS, JR., August 27, 1981:

Walter T. Veerasingham (plaintiff) seeks to invoke the original jurisdiction of this Court, in an equity action against two Commonwealth defendants: the Attorney General,[1] and the Executive Director of the Juvenile Court Judges' Commission (Commission) of the Department of Justice.

The plaintiff was employed by the Commission as a legal consultant from approximately February, 1975 until the end of March, 1978. In that position,

---

[1] Edward G. Biester, Jr., was originally named as Attorney General in this case; he no longer holds that office. Leroy S. Zimmerman, the present Attorney General, is automatically substituted as party-defendant in accordance with Pa. R.A.P. 502(c).

he had civil service status in the Department of Justice. On approximately March 25, 1978, the plaintiff received a letter notifying him that he was being separated from his position with the Commission on the grounds of "abandonment of position." The letter of termination was issued by the Attorney General, based on information supplied to the Attorney General by Ronald Sharp, who is the defendant-Executive Director of the Commission. Defendant Sharp was the plaintiff's immediate supervisor at the Commission.

Apparently, the plaintiff's dismissal resulted from inaccurate reports by Sharp to the Attorney General relating to an absence from work by the plaintiff in early March, 1978. Although plaintiff was terminated in the manner above stated, the misunderstanding which caused his dismissal was subsequently resolved through a grievance procedure instituted by the plaintiff's union, the Pennsylvania Social Services Union (Union). As a result of the Union's intervention, the plaintiff was offered re-employment with the Commission in his former position, with back pay and benefits, in August, 1978. The plaintiff, however, had executed a one-year contract of employment with another employer in July, 1978; and his obligation under that contract constrained him to refuse the proffered reinstatement.

By letter dated August 30, 1978, the Union advised the plaintiff that a decision by him not to return to his position with the Commission would result in the Union taking no further action in the matter of his grievance. The plaintiff so decided, and the Union's role in the dispute concluded. It was, and remains, the Union's position that its goal throughout its representation of the plaintiff was to secure his reinstatement with back pay and benefits. Having achieved its stated aim, the Union felt it had pursued

plaintiff's grievance to a proper conclusion. It is the plaintiff's position that the Union should have submitted his grievance to arbitration regardless of his decision not to return to the Commission.

The plaintiff next contacted the Civil Service Commission (Civil Service) about his dismissal. By letter dated November 2, 1978, he indicated to Civil Service that he had been wrongfully removed from his employment. By letter dated November 15, 1978, Civil Service advised him that, since the Civil Service Act[2] requires that an appeal to Civil Service from a personnel action be filed within twenty days of receipt of notice of the personnel action, Civil Service was "uncertain as to [plaintiff's] intent in forwarding [his] letter" to Civil Service at that time. This exchange of correspondence constitutes the plaintiff's only contact with Civil Service regarding his termination.

Plaintiff thereafter commenced this action by writ of summons in assumpsit dated October 11, 1979, against defendants Sharp and the Attorney General. By praecipe, defendants sought a rule to file a complaint, which rule was issued by the Chief Clerk of this Court on November 7, 1979. Plaintiff subsequently filed a complaint in equity in January, 1980; and defendants filed preliminary objections to the complaint in February, 1980. Defendants' preliminary objections, by which they raised questions of jurisdiction, laches, and a demurrer, are now before us.

We are unconvinced that the plaintiff's equity action is within the province of this Court's original jurisdiction.

The plaintiff held a position with the Juvenile Court Judges' Commission, which position was pro-

---

[2] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§741.1 *et seq.*

tected by the Civil Service Act. Section 951 of the Civil Service Act[3] provides for an appeal to the Civil Service Commission from certain personnel actions, included among which is separation; that section of the Act provided the plaintiff with an administrative remedy. Additionally, plaintiff's position was covered by a collective bargaining agreement between his Union and the Commonwealth. The collective bargaining agreement afforded plaintiff the protection of the Public Employe Relations Act,[4] Section 903[5] of which provides for mandatory arbitration of grievances such as the plaintiff's. The plaintiff thus had a second administrative remedy provided by statute.

Where an administrative remedy is statutorily described the general rule is that a court, whether a court of equity or a court of law, is without jurisdiction to entertain the action. *Lilian v. Commonwealth,* 467 Pa. 15, 354 A.2d 250 (1976); *DeLuca v. Buckeye Coal Co.,* 463 Pa. 513, 345 A.2d 637 (1975). Furthermore, this Court has held that, under the doctrine of exhaustion of administrative remedies, one must exhaust all available administrative remedies before there arises a right to judicial review. *Killian v. Unemployment Compensation Board of Review,* 46 Pa. Commonwealth Ct. 219, 405 A.2d 1372 (1979); *Borough of Baldwin v. Department of Environmental Resources,* 16 Pa. Commonwealth Ct. 545, 330 A.2d 589 (1974).

The plaintiff had two statutory remedies available to him; he had a choice of two administrative appeal procedures, either of which would have presented him with an opportunity to be heard in a com-

---

[3] Added by Section 27 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.951.

[4] Act of July 23, 1970, P.L. 563, 43 P.S. §§1101.101 *et seq.*

[5] 43 P.S. §1101.903.

petent administrative forum. The plaintiff chose to eschew the Civil Service appeal and instead to proceed, represented by his Union, under the collective bargaining agreement's grievance procedure. It was incumbent upon him to pursue that procedure to its proper conclusion, thereby exhausting the statutory, administrative remedy available to him.

The Union refused to take the plaintiff's grievance to the final step of arbitration; the Union's action in so refusing prevented plaintiff from exhausting his proper remedy. Section 903 of the Public Employe Relations Act provides that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement *is mandatory.*" (Emphasis added). Thus, the issue needing resolution in the instant controversy is whether or not the Union wrongfully refused to submit plaintiff's grievance to arbitration; and that matter is clearly within the exclusive jurisdiction of the Pennsylvania Labor Relations Board. *See Hollinger v. Department of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976); *Ziccardi v. Department of General Services,* 50 Pa. Commonwealth Ct. 367, 413 A. 2d 9 (1980); *Pronko v. Shapp,* 44 Pa. Commonwealth Ct. 541, 403 A.2d 1382 (1979).

Accordingly, the defendants' preliminary objections raising the question of jurisdiction are sustained; and the plaintiff's complaint is dismissed.[6]

ORDER

AND Now, the 27th day of August, 1981, the defendants' preliminary objections raising a question of jurisdiction are hereby sustained; and the plaintiff's complaint is dismissed.

---

[6] The jurisdictional issue being dispositive, we need not consider the other issues raised by defendants' preliminary objections.