In re James KINGSLEY, a/k/a Jim Kingsley, Debtor.

James R. WALSH, Esquire, Trustee of the Bankruptcy Estate of James Kingsley, a/k/a Jim Kingsley, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE; and H.C. Copeland & Associates, Defendants.

and

James R. WALSH, Esquire, Trustee of the Bankruptcy Estate of James Kingsley, a/k/a Jim Kingsley, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA, STATE EMPLOYES' RETIREMENT BOARD, Defendant.

Bankruptcy No. 93–21645–BM.
Adv. Nos. 94–2188–BM, 94–2374–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 17, 1995.

James R. Walsh, Trustee, Spence Custer Saylor Wolfe & Rose, Johnstown, PA.

Susan Ray Kempski, Com. of Pennsylvania, State Employes' Retirement Bd., Harrisburg, PA.

Donna S. Webber, Asst. General Counsel, East Brunswick, NJ.

Robert C. Edmundson, Asst. Atty. Gen., Pittsburgh, PA.

Atty. Gen., Com. of Pennsylvania, Harrisburg, PA.

Kevin P. Leonard, Latrobe, PA, for debtor.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

The chapter 7 trustee has brought the above adversary actions seeking an order directing defendants to turn over to him as trustee the non-exempt portion of debtor's interest in a deferred compensation plan (hereinafter "DCP"). The trustee alleges that the *res* in question is property of debtor's bankruptcy estate that could be utilized to make partial distribution to debtor's creditors.

Defendants object to the trustee's request on several grounds. They first deny that debtor's interest in the DCP is property of the bankruptcy estate. Next, they deny that we have authority to decide these cases. If we do have authority, they then insist we either must or should abstain from deciding them. Finally, defendants deny that the

trustee is entitled to receive the entire non-exempt portion of debtor's interest in the DCP and insist that he is entitled to only a part thereof.

Judgment will be entered against the defendants and in favor of the trustee. Defendants will be directed to turn over to the trustee the entire non-exempt portion of debtor's interest in the DCP.

-I-

## FACTS

Debtor has been employed since 1984 by defendant Commonwealth of Pennsylvania, Department of Public Welfare at Torrance State Hospital. For his labors debtor enjoys his salary, a pension plan of the type described in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) which all agree is not an asset of this estate as well as, *inter alia*, the DCP which is at issue herein.

Defendant Commonwealth of Pennsylvania State Employes' Retirement Board (hereinafter "SERB") is an administrative board of the Commonwealth of Pennsylvania.

Defendant H.C. Copeland & Associates is the administrator of a DCP created by SERB in which debtor participates.

In 1987, the Pennsylvania General Assembly enacted enabling legislation for the creation pursuant to § 457 of the Internal Revenue Code (26 U.S.C. § 457) of a DCP for Commonwealth employees. *See* 72 P.S. § 4521.2(a). Authority to create such a program was delegated to SERB. *See* 72 P.S. § 4521.2(c). Among other things, SERB was charged with entering into written agreements with financial institutions to administer such plans and with promulgating regulations pertaining to such plans. *See* 72 P.S. § 4521.2(e)(1)–(2). Any DCP so created was to be administered in compliance with 26 U.S.C. § 457 and accompanying regulations. *See* 72 P.S. § 4521.2(e)(5). The DCP must not be a "trust" and participants were deprived of any right to "commute, sell, assign or otherwise transfer or convey" their right to receive payment under the DCP. 72 P.S. § 4521.2(j).

As of January 1, 1989, the Commonwealth of Pennsylvania established a DCP for its officers and employees. Section 3.01 of the DCP provided that SERB was responsible for administering the DCP but could designate others to assist in the administration of the DCP.

Section 6.02 of the DCP tracks the language of 26 U.S.C. § 457(b)(6). It provides as follows:

> All amounts of Deferred Compensation, all property and rights purchased with such amounts ... and any and all rights under such contracts, and all income attributable to such amounts, property, or rights shall remain until paid to the Participant or Beneficiary in accordance with the Plan solely the amounts and property and rights of the Employer, without being restricted to the payment of Deferred Compensation under the Plan, and shall remain subject to the claims of the Employer's general creditors.

> Any amounts, property, or rights held as Deferred Compensation under the Plan shall not be held in trust for Participants and Beneficiaries, and shall not be held as collateral or security for the fulfillment of the Employer's obligations under the Plan. Participants and Beneficiaries shall not have any vested interest or secured or preferred position with respect to any amounts, property, or rights held as Deferred Compensation under the Plan. Participants and Beneficiaries shall have no claim against the Employer except as an unsecured general creditor.

The above paragraphs assure that the DCP shall not be designated as or confused with a "trust".

Section 7.11 of the DCP provided that in the event of an "unforeseeable emergency", a participant was entitled to a lump sum distribution in an amount that was reasonably needed to satisfy the emergency.

Section 7.12 tracks the language of regulations promulgated by the Internal Revenue Service in defining "unforeseeable emergency":

> **Definition of unforeseeable emergency.** An unforeseeable emergency means a

severe financial hardship to the Participant resulting from a sudden and unexpected illness or accident to the Participant or of a dependent of the Participant ..., loss of the Participant's property due to casualty, or other similar and extraordinary unforeseeable circumstances arising as a result of events beyond the control of the Participant. The need to send the Participant's child to college or the desire to purchase a home is not considered an unforeseeable emergency. The determination as to whether an unforeseeable emergency exists is based on the facts of the individual case.

A hardship distribution shall not be paid to the extent that the financial hardship is or may be relieved through reimbursement or compensation by insurance or otherwise, by borrowing from commercial sources on reasonable commercial terms to the extent that this borrowing would not itself cause a severe financial hardship, by cessation of deferrals under the Plan, or by liquidation of the Participant's other assets, to the extent that this liquidation would not itself cause severe financial hardship.

Section 8.01 of the DCP tracked the language of 72 P.S. § 4521.2(j) relating to spendthrift provisions. It provided as follows:

> The participant or Beneficiary shall not have the right to commute, sell, assign, pledge, transfer, or otherwise convey, use, or encumber any right to receive payments under the Plan, which payments and rights are expressly declared to be non-assignable and non-transferable. Deferred compensation shall not be subject to attachment, garnishment, or execution, or be transferrable by operation of law in the event of a divorce or marital separation or of a bankruptcy or insolvency, except to the extent otherwise required by law.

In August of 1993, SERB entered into an agreement with Copeland whereby SERB delegated to Copeland the responsibility of administering the DCP, including determining whether a participant had incurred an "unforeseeable financial hardship".

Debtor elected to participate in the DCP. The balance of his interest in the account as of May 7, 1993, the date of this bankruptcy filing, was $11,434.00. He continues to participate in the DCP and has a portion of each paycheck credited thereto.

Debtor also participates in a pension fund managed by SERB. His pension is separate and apart from the DCP and is not at issue in this proceeding.

Debtor filed a voluntary chapter 7 petition on May 7, 1993. The schedules attached to the petition indicate that debtor has assets with a declared value of $18,789.00 (including the DCP) and has liabilities totalling $35,712.17.

Schedule B, Personal Property, lists debtor's interest in the above DCP and values it at $11,434.00. His pension is also listed on Schedule B.

On Schedule C, Exemptions, debtor claimed an exemption, *inter alia,* in the entire value of the DCP pursuant to 11 U.S.C. § 522(d)(5) and (d)(10)(E).

Schedule F, Creditors Holding Unsecured Nonpriority Claims, lists general unsecured debt in the amount of $24,687.25. Virtually all of the debt listed in Schedule B is credit card debt that has accumulated in accounts debtor has maintained for several years.

Debtor avers his bankruptcy was the result of debt accrued between 1986 and 1993 that he eventually was unable to repay. Additionally, debtor avers that neither he nor any dependent has suffered a sudden and unexpected illness or accident. Debtor has not lost any property due to casualty.

The schedules and statements also reveal that at the time of this filing debtor owed his bankruptcy counsel the sum of $1,100.00 for services rendered prior to the filing of the bankruptcy petition and that he paid $400.00 of that amount to counsel before filing the petition. We are not advised on this record as to whether this debt has been subsequently paid.

The chapter 7 trustee, who was appointed shortly after the case was commenced, subsequently objected to debtor's claimed exemption pursuant to 11 U.S.C. § 522(d)(10)(E)

and (d)(5) of the entire amount of his interest in the DCP. The trustee maintained that the asset was not exemptible at all pursuant to § 522(d)(10)(E) and that the amount claimed as exempt pursuant to § 522(d)(5) exceeded the amount allowable under that provision. He requested that the exemption claimed pursuant to 11 U.S.C. § 522(d)(10)(E) be disallowed in its entirety and that the exemption claimed pursuant to § 522(d)(5) be limited to $4,080.00.

An order of court subsequently was entered, after notice and a hearing, disallowing the exemption claimed pursuant to § 522(d)(10)(E) and limiting the allowable amount of the exemption claimed pursuant to § 522(d)(5) to $4,080.00. The balance of debtor's interest in the DCP, some $7,300.00, was not exempted. No appeal from this order was taken.

On June 23, 1993, after the § 341 meeting of creditors was convened and concluded, the trustee reported that property of the bankruptcy estate was available for distribution to creditors in accordance with 11 U.S.C. § 726. The property to which the trustee was referring was the non-exempt portion of debtor's interest in the DCP.

On May 4, 1994, the trustee brought the above-captioned adversary action at Adversary No. 94–2188–BM to compel an accounting and turnover of estate property. The trustee alleges that debtor's interest in the DCP is property of the bankruptcy estate pursuant to 11 U.S.C. § 541 and seeks an order directing an accounting of debtor's activity in the DCP and determining that the trustee is entitled, due to unforeseeable emergency, to withdraw the non-exempt portion of debtor's interest in the DCP.

On October 20, 1994, the trustee submitted a formal application to Copeland for an emergency distribution to the trustee of the non-exempt portion of debtor's interest in the DCP. The trustee alleged that the emergency was the result of income modifications and substantially increased living expense that rendered debtor incapable of meeting his required living expenses.[1]

On October 24, 1994, the chapter 7 trustee commenced the above-captioned adversary action at Adversary No. 94–2374–BM that in essence is the same as the action set forth at Adversary No. 94–2188–BM. The relief sought also is identical.

SERB brought a motion to dismiss Adversary No. 94–2374–BM on November 16, 1994. According to SERB, the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because debtor's interest in the DCP was excluded as a matter of law from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). It further argued that exclusive jurisdiction to decide the matter lay with the Commonwealth Court of Pennsylvania. As an alternative to dismissal, SERB argued that we should abstain pursuant to 28 U.S.C. § 1334(c)(1).

An order of court was entered on December 10, 1994, deferring decision on SERB's motion to dismiss or to abstain until Adversary No. 94–2374–BM was tried along with the other adversary action at Adversary No. 94–2188–BM. It had been alleged that factual questions were in need of resolution.

Copeland notified the trustee on December 15, 1994, that his request for an emergency distribution was partially allowed, even though debtor previously averred that he had suffered no sudden and unexpected illness or lost any property due to casualty. The notice stated in relevant part as follows:

> [I]t has been determined that your situation does qualify for a partial withdrawal as an unforeseeable financial hardship, and a withdrawal for $1,100.00 has been approved for legal fees. This determination has been made on the assumption that Mr. Kingsley's Deferred Compensation funds are part of his bankruptcy estate.
>
> A check less applicable State and Federal income taxes will be forwarded to you if a judicial determination is made that Mr. Kingsley's Deferred Compensation funds are part of the bankruptcy estate....

---

1. According to debtor's schedules and statements, his monthly expenditures exceeded his monthly income by the sum of $66.59.

The trustee has not appealed the above determination by Copeland to the appropriate state court having jurisdiction to hear and decide such appeals.

Trial of the above-captioned adversary actions was conducted on February 24, 1995. The parties submitted a stipulation as to the facts *in lieu* of calling witnesses and asked the court to decide the cases on a case-stated basis.

### -II-

### DISCUSSION

Defendants have raised several objections to the trustee's complaints.

Their first objection is that debtor's interest in the DCP is excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

They next object that this court lacks jurisdiction to determine whether the trustee is entitled to the non-exempt portion of debtor's interest in the DCP. Any appeal of Copeland's decision, they argue, can be decided only by the Commonwealth Court of Pennsylvania.

Defendants next argue that even if this court has jurisdiction to hear and decide the matter, we must or should abstain pursuant to 28 U.S.C. § 1334(c)(1) or (2).

Finally, defendants argue that debtor's circumstances do not justify a hardship distribution in excess of $1,100.00.

There are certain anomalies in this fact situation that have not been addressed by the parties. Specifically, we refer to the fact that debtor unsuccessfully attempted to exempt this *res* and that a final order of court was entered denying this exemption. If the Commonwealth's position is upheld, debtor would in fact enjoy the benefit of this unlawful exemption.

In addition, the Commonwealth's agent has determined that debtor's situation does qualify for a partial withdrawal of $1,100.00 as a result of an unforeseen financial hardship. We are advised informally that debtor has in fact paid his bankruptcy counsel. Playing out the Commonwealth's scenario, we would have the Commonwealth agent paying the bankruptcy trustee the sum of $1,100.00—to be paid to debtor's bankruptcy counsel. Thereafter, debtor's bankruptcy counsel would pay same to debtor, leaving debtor's creditors to be paid nothing.

As stated above, the parties have not pursued these avenues and as their pursuit would not change the decision in this case we will address and decide the expressed contentions *seriatim.*

A. *Is Debtor's Interest In The DCP Excluded From The Bankruptcy Estate Pursuant To 11 U.S.C. § 541(c)(2)?*

Section 541 of the Bankruptcy Code sets forth what is and what is not property of the bankruptcy estate. It provides in relevant part as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541.

■ Debtor's interest in the DCP constitutes property of the estate pursuant to § 541(a)(1).

■ The fact that debtor's entitlement to receive compensation is deferred does not place it beyond the scope of § 541(a)(1). At the very least, debtor has an expectation of a future return of his investment. *See In re Hansen,* 111 B.R. 647, 649 (Bankr.N.D.Ohio 1990). Section 541(a)(1) is broad in scope and includes "all legally recognizable interests although they may be contingent and not subject to possession until some future time". *In re Ryerson,* 739 F.2d 1423, 1425 (9th Cir.1984).

This conclusion is not altered by the language in § 6.02 of the DCP providing that all rights to the funds reside "solely" in the employer. This same section of the DCP also states that debtor has no claim against the plan except as a general unsecured credi-

tor of the employer. Such rights constitute property of the estate. *See Matter of Pedersen,* 155 B.R. 750, 757 (Bankr.S.D.Iowa 1993). Nothing in the language of 26 U.S.C. § 457 prevents such a conclusion. *Id.*

■ Defendants do not seriously dispute the above conclusions. They instead argue that one of the exceptions identified in § 541(a)(1) applies to the DCP. According to defendants, debtor's interest in the DCP is excluded from the bankruptcy estate by virtue of § 541(c)(2) of the Code, which provides as follows:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable under this title.

11 U.S.C. § 541(c)(2).

Section 541(c)(2) unequivocally states that the relevant interest of the debtor must be "in a trust". *See In re Pedersen,* 155 B.R. at 757. Section 6.02 of the DCP, however, expressly provides that "[a]ny amounts, property, or rights under the Plan shall *not* be held in trust for Participants or Beneficiaries". (Emphasis added.) This fact alone would seem to be fatal to defendants' contention. The requirement that the interest in question be "in a trust" has not been met.

Defendants concede (as they undoubtedly must) that the DCP at issue here is not strictly a "trust" but insist that this is not fatal to their contention that the DCP falls within the scope of § 541(c)(2) and therefore lies beyond the scope of § 541(a)(1).

According to defendants, the proper inquiry is not whether the DCP literally is a "trust" but whether, "on balance" it has the essential characteristic of a trust in that it bars a participant from reaching or alienating their interest therein. *See In re Baxter,* 135 B.R. 353, 357 (Bankr.E.D.Ark.1992). Relying upon the analysis set forth in *In re Wheat,* 149 B.R. 1003, 1005–07 (Bankr. S.D.Fla.1992), defendants then assert that debtor's interest in the DCP falls within the scope of § 541(c)(2) because the restriction on debtor's ability to transfer or alienate his interest therein is enforceable. This contention is without merit.

The fatal flaw in defendants' argument is that it ignores the plain language of § 541(c)(2). In reaching the conclusion that it did in *Patterson v. Shumate,* the Supreme Court repeatedly emphasized that it was looking to the plain language of § 541(c)(2):

> In our view, *the plain language of the Bankruptcy Code and ERISA is our determinant....* Having concluded that "applicable nonbankruptcy law" is not limited to state law, we next determine whether the anti-alienation provision contained in the ERISA-qualified plan at issue here *satisfies the literal terms of § 541(c)(2)....* Although courts "appropriately may refer to a statute's legislative history to resolve statutory ambiguity", *Toibb v. Radloff,* [501] U.S. [157] at [162], 111 S.Ct. [2197] at 2200 [115 L.Ed.2d 145 (1991)], *the clarity of the statutory language at issue here in this case* obviates the need for such inquiry. (Emphasis added.)

*Patterson v. Shumate,* 504 U.S. 753, ——, ——, 112 S.Ct. 2242, 2246–48, 119 L.Ed.2d 519 (1992).

Defendants' argument plays fast and loose with the clear and unambiguous language of § 541(c)(2) in speaking of the debtor's interest "in a trust". Section 541(c)(2) does not refer to the interest of the debtor in what "on balance has certain of the essential characteristics of a trust". Has Congress so intended when it enacted § 541(c)(2), it surely would have employed different language.

Defendants' position is not entirely consistent or coherent. They insist that the DCP is not really a trust so that it qualifies for tax-deferred treatment by the IRS while insisting that the DCP has the essential attributes of a trust so that it is excluded from the bankruptcy estate. We have difficulty in accepting such a position. The Commonwealth cannot have it both ways on this issue.

■ Moreover, not only is the DCP in truth not a trust, it lacks so many of the essential attributes of a trust that it makes little or no sense to argue that, on balance, it qualifies as one for purposes of § 541(c)(2).

■ For instance, a trust exists when one person (a trustee) holds a legal title to prop-

erty while equitable or beneficial title belongs to another (the beneficiary). *See* Bogert, Trusts (6th ed. 1987) § 1. Both legal and equitable title to the funds in the DCP belong to the Commonwealth of Pennsylvania. Section 6.02 of the DCP provides that *all* rights to amounts in the DCP are "solely" the property of the Commonwealth until distributed to the participant.

■ A trust and a debt are different kinds of relationships. Care should be taken not to confuse the latter for the former. In a trust, one person has a duty to deal as a fiduciary with respect to property for the benefit of another. In a debt, one person merely has an obligation to pay a sum of money to another. *See In re Shervin*, 112 B.R. 724, 734 (Bankr.E.D.Pa.1990). If the former is entitled to use funds as his or her own and to commingle them with their own funds, a debtor-creditor relationship exists rather than a trust. *Id.* The relationship between the Commonwealth and debtor is that of debtor to creditor. The Commonwealth merely owes a debt to debtor. Section 6.02 of the DCP provides that all funds in the DCP are subject to the claims of general creditors of the Commonwealth and that a participant has no claims against the funds save as a general unsecured creditor.

Were we to accept defendant's contention that we are to determine only whether the DCP was "on balance" a trust, we would be constrained to conclude that it is not even a trust "on balance". It is a gross exaggeration of defendants to claim that the DCP falls under § 541(c)(2) because, on balance, it has the essential attributes of a trust. While there may be an enforceable restriction on the transfer of debtor's interest in funds in the DCP, essentially all other attributes of a spendthrift trust are lacking. Defendants have focused on the restriction on transfers set forth in Section 8.02 of the DCP, while ignoring the plain language of § 541(c)(2) as well as the basic elements that make up a "trust".

One final comment is in order. Defendants make much ado about policy considerations which, they insist, favor their position. We find the opposite to be true. Were defendants to prevail, the funds in the DCP contributed by debtor would lie beyond the reach of debtor's creditors just as they would had they been placed in a true spendthrift trust.

■ Such an outcome runs contrary to the general rule that one cannot place property in a spendthrift trust for their own personal benefit. *See CIT Corp. v. Flint*, 333 Pa. 350, 353–54, 5 A.2d 126, 128 (1939); *also, Rienzi v. Goodin*, 249 Pa. 546, 95 A. 259 (1915). Public policy prohibits a debtor from placing their property beyond the reach of their creditors while enabling them to enjoy the benefits of that property. *See In re Mogridge's Estate*, 342 Pa. 308, 311–12, 20 A.2d 307, 309 (1941).

### B. *May This Court Decide These Actions?*

■ Defendants next maintain that we cannot adjudicate the above adversary actions because exclusive jurisdiction to do so lies with the Commonwealth Court of Pennsylvania. The argument in support of their position goes as follows.

Copeland's decision allowing a distribution of only $1,100.00 "for legal fees" constitutes a final decision by the head of an agency of the Commonwealth of Pennsylvania. As successor to debtor, the trustee has the right to appeal Copeland's decision to the court vested with jurisdiction over such appeals. *See* 2 Pa.C.S.A. § 702. Exclusive jurisdiction of appeals from final orders of a state agency resides in the Commonwealth Court of Pennsylvania. *See* 42 Pa.C.S.A. § 763(a). All other courts are deprived of jurisdiction to decide the appeal. *See Veerasingham v. Sharp*, 61 Pa.Cmwlth. 460, 434 A.2d 221 (1981); *also Elizabeth Twp. v. Power Maintenance Corp.*, 53 Pa.Cmwlth. 270, 417 A.2d 1285 (1980).

This argument is misguided. We unquestionably have jurisdiction to determine what property is part of this bankruptcy estate and to direct turnover if bankruptcy property is withheld. The fact that under Pennsylvania law exclusive jurisdiction to hear and to decide any appeal of Copeland's decision may reside in the Commonwealth Court of Pennsylvania is beside the point and has no bear-

ing on whether we may hear and decide these adversary actions.

When he brought the above actions, the trustee was *not* appealing any *final* decision by Copeland concerning distribution of the nonexempt portion of debtor's interest in the DCP. They were brought several months *prior* to Copeland's decision on the trustee's application for emergency distribution. The application to Copeland was made on the off chance that a decision favorable to the trustee would obviate the need to pursue the above adversary actions. The trustee, in bringing the above adversary actions, instead seeks a determination that the non-exempt portion of debtor's interest in the DCP is estate property and should be turned over to him as trustee.

Title 28 U.S.C. § 157 provides in relevant part as follows:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, ... and may enter appropriate orders and judgments, subject to review under section 158 of this title....

28 U.S.C. § 157. By the terms of this provision, we may hear and determine and may enter appropriate orders and judgment in a proceeding if it is "core".

▆▆▆▆ The standard for determining whether a proceeding is "core" has been variously stated by the United States Court of Appeals for the Third Circuit. In one case it indicated that a proceeding is "core" if it comports with any of the examples of core proceedings set forth at 28 U.S.C. § 157(b). *See In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 267 (3d Cir.1991). In another it stated that a proceeding is "core" if it invokes a substantive right provided by title 11 or if, given its nature, it could arise only in the context of a bankruptcy case. *See Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir.1990).

Section 157 of title 28 provides as follows:

> (b)(2) Core proceedings include, but are not limited to— ...

> (E) orders to turn over property of the estate.

28 U.S.C. § 157.

The adversary actions at issue qualify as "core" proceedings by either standard. The trustee has brought the adversary actions with the objective of obtaining an order directing defendants to turn over property of the estate. In addition, the trustee has invoked a substantive right provided by title 11. Section 542 of the Bankruptcy Code provides in relevant part as follows:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 157. Review of the complaints makes it abundantly clear that the above adversary actions are based on this provision of the Bankruptcy Code.

▆▆▆ It is hornbook law that federal law prevails over inconsistent state law by virtue of Article VI, clause 2 of the United States Constitution (the Supremacy Clause). *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). This fundamental principle of jurisprudence applies to federal bankruptcy laws. *See International Shoe Co. v. Pinkus*, 278 U.S. 261, 263–64, 49 S.Ct. 108, 109–10, 73 L.Ed. 318 (1929). To the extent that it conflicts with federal law, the state law is preempted. *See Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918).

When it enacted 28 U.S.C. § 157(b)(2)(E), Congress unquestionably intended that questions pertaining to the turnover of property of the bankruptcy estate be heard and decided by a bankruptcy court.

If defendants are correct in arguing that state law vests exclusive jurisdiction in the Commonwealth Court of Pennsylvania to decide all issues concerning the trustee's request for distribution of the non-exempt por-

tion of debtor's interest in the DCP, then state law conflicts with federal law and is preempted.

### C. *Must Or Should We Abstain?*

Section 1334 of title 28 provides as follows:

(c)(1) Nothing in this section prevents a district court in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to an action which could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334.

Subsection (c)(1) authorizes a court to exercise its discretion and to abstain from hearing matters that rise under the Bankruptcy Code. Subsection (c)(2) mandates abstention under certain conditions.

Defendants argue that abstention is mandated by subsection (c)(1) or, in the alternative, that we should exercise our discretion and abstain from deciding the above cases. We choose to address these contentions in reverse order.

### 1) Mandatory Abstention: § 1334(c)(2).

■■■■ Defendants' contention that abstention is mandated by § 1334(c)(2) is without merit as it applies only to noncore, related proceedings. *See In re A & D Care, Inc.,* 90 B.R. 138, 141 (Bankr.W.D.Pa.1988). We have determined that the above adversary actions are core proceedings.

A party seeking mandatory abstention must show that:

(1) there has been a timely motion for abstention;

(2) the proceeding is based on State law;

(3) the proceeding is related to a case under title 11;

(4) the proceeding does not arise under title 11 or in a case under title 11;

(5) the proceeding could not have been brought in a federal court except for 28 U.S.C. § 1334; and

(6) an action has been commenced in a state court of appropriate jurisdiction and can be adjudicated there in a timely manner.

*In re Marcus Hook Development Park, Inc.,* 153 B.R. 693, 702 (Bankr.W.D.Pa.1993).

These requirements have not been satisfied in this instance.

Although determination of these adversary actions does, to an extent, implicate state law, the proceeding itself is based upon federal bankruptcy law. As was noted previously, the actions have been brought pursuant to the provisions of the Bankruptcy Code and the Internal Revenue Code. They are not brought under state law.

The final requirement unquestionably also has not been met in this instance. Abstention is not mandated because no action has been commenced in state court and accordingly, adjudication in a timely manner is not possible. As was noted previously, the trustee did not seek judicial review of Copeland's determination by appealing to the Commonwealth Court. The emergency application, standing alone, does not constitute commencement of an action in a state court of appropriate jurisdiction.

### 2) Discretionary Abstention: § 1334(c)(1).

■■■■ Discretionary abstention also is not warranted in this instance.

The interests of justice would be disserved, rather than served, were we to abstain from hearing and deciding these actions. We see no reason to abstain when so doing would mean that an action for which we undoubtedly have authority to enter a judgment will not be adjudicated by any court. It would be inappropriate to abstain from hearing and deciding a case when no state court action has been (and perhaps now cannot be) brought. We would be derelict in carrying

out our judicial duties were we to abstain under such circumstances.

Comity and respect for state law also do not favor abstention. As far as we can ascertain, the question of what constitutes an "unforeseeable emergency" is an issue of first impression in this jurisdiction. To our surprise, we have discovered that Pennsylvania courts have not been called upon to decide this question. We do not believe that this issue is exceedingly complex or that its resolution implicates highly sensitive policy considerations that should be left to a state court of resolve. We are confident that we are capable of deciding this issue.

### D. *How Much Is The Trustee Entitled To As A Hardship Distribution?*

██ At least one case dealing with a virtually identical DCP created by the State of Ohio for its employees has held that the filing of a bankruptcy petition constitutes an "unforeseeable emergency" justifying a hardship distribution. *See In re Council,* 122 B.R. 64, 68 (Bankr.S.D.Ohio 1990).

██ Defendants do not deny that an "unforeseeable emergency" has occurred or that the trustee is entitled to a hardship distribution. They instead take the curious position that the trustee is entitled to a hardship distribution of only $1,100.00, as determined by Copeland.

Their position is without merit. The trustee is entitled to a hardship distribution in the full amount of debtor's interest in the DCP after his exemption is taken.

Section 7.11 of the DCP makes allowance in the event of an unforeseeable emergency for a hardship distribution in an "amount that is reasonably needed to satisfy the emergency need".

It was noted previously that debtor's general unsecured creditors are owed approximately twenty-four thousand dollars ($24,000.00) and that the sole asset available for distribution to them is the non-exempt portion of debtor's interest in the DCP. As far as we can ascertain, the available amount is slightly in excess of seven thousand dollars ($7,000.00).

The trustee is entitled under the provisions of the DCP to receive the non-exempt portion of debtor's interest in the DCP. Although this amount will not suffice to pay general unsecured creditors in full, it is "reasonably needed to satisfy an emergency need" in that it will make possible a *pro rata* distribution to these creditors.

Defendants' position that only $1,100.00 is reasonably needed to satisfy debtor's emergency need is untenable. Defendants were unable to agree among themselves whether the $1,100.00 allowed by Copeland "for legal fees" was intended to pay debtor's bankruptcy counsel or the chapter 7 trustee. In addition, no coherent explanation was offered as to how only this amount was required to satisfy the undisputed emergency need.

An appropriate order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 17th day of April, 1995, in accordance with the accompanying Memorandum Opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED,** that judgment is entered in favor of James R. Walsh, Trustee, and against defendants Commonwealth of Pennsylvania, Department of Public Welfare and H.C. Copeland & Associates at Adversary No. 94–2188–BM.

IT IS FURTHER **ORDERED** that judgment is entered in favor of James R. Walsh, Trustee, and against defendant Commonwealth of Pennsylvania State Employees' Retirement Board at Adversary No. 94–2374–BM.

Defendants are **ORDERED** to provide the trustee with an accounting of all activity in debtor's account from one year prior to the filing of the bankruptcy petition to present. In addition, defendants are **ORDERED** to pay to the trustee the balance of debtor's interest in the Deferred Compensation Plan as of May 7, 1993, except for the sum of $4,080.00 lawfully exempted by debtor.