In re Jeffrey S. SCHOENEWEIS and Cammie R. Schoeneweis, Debtors.

William Pineo, Trustee, Plaintiff,

v.

Jeffrey S. Schoeneweis, Commonwealth of Pennsylvania State Employees Retirement Board, and Commonwealth of Pennsylvania State Employees Retirement System, Defendants.

Bankruptcy No. 99–28446–BM.
Adversary No. 01–2061–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

Aug. 6, 2001.

---

Kemal A. Mericli, Pittsburgh, PA, for Commonwealth.

William Pineo, Meadville, PA, Chapter 7 Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

This is not the first time the question has arisen in this court whether State Employees Retirement Board ("SERB"), an agency created by the Commonwealth of Pennsylvania, should turn over to the chapter 7 trustee a debtor's interest in a voluntary deferred compensation plan ("DCP") established for employees of the Commonwealth.

We previously determined in another case that debtor's interest in the DCP was not excluded from his bankruptcy estate under the version of 72 P.S. § 4521.2 then in effect. *In re Kingsley*, 181 B.R. 225 (Bankr.W.D.Pa.1995). After SERB appealed and the district affirmed our decision, SERB relented and turned over debtor's interest in the DCP to the chapter 7 trustee. Subsequent to our decision in *Kingsley* but prior to commencement of this bankruptcy case, the Pennsylvania General Assembly amended 72 P.S. § 4521.2.

We previously determined in this bankruptcy case that, notwithstanding the amendments to 72 P.S. § 4521.2, the interest of debtor Jeffrey Schoeneweis in the same DCP was included in his bankruptcy estate. In response to the present adversary action brought by the chapter 7 trustee to recover debtor's interest in the DCP, SERB brought a motion to dismiss the complaint on the theory that the action against it in this court is barred by the Eleventh Amendment to the United States Constitution. It also seeks to re-litigate issue decided in the previous adversary action wherein they participated.

We are left to wonder why SERB has decided in this instance to adamantly oppose the effort of the chapter 7 trustee to have SERB turn over debtor's interest in this same DCP when debtor himself has voiced no objection. In particular, we are left to wonder whether the Commonwealth's opposition is animated more by the desire to curry favor with its employees and their representatives at the expense of debtor's pre-petition creditors than by the desire to protect its sovereign immunity. We wonder whether this self-styled agency of the Commonwealth has any interest in protecting creditors who reside in the Commonwealth, who will have the debts owed to them discharged while debtor keeps his job, his salary, his pension benefits and this voluntary savings account.

For reasons set forth in this memorandum opinion, we will deny SERB's motion to dismiss the complaint in this adversary action at this time.

### FACTS

Debtors are husband and wife. Debtor Jeffrey Schoeneweis has been employed by the Commonwealth of Pennsylvania as a police officer earning in excess of $50,000 annually for more than a decade. Debtor Cammie Schoeneweis primarily works at home.

In addition to participating in a mandatory pension plan established for employees of the Commonwealth, debtor Jeffrey Schoeneweis participates in a voluntary DCP established for employees of the Commonwealth in accordance with 72 P.S. § 4521.2.

Debtors filed a voluntary chapter 7 petition on November 12, 1998. A chapter 7 trustee was appointed shortly thereafter. The original bankruptcy schedules referred to the above mandatory pension plan but characterized it as "excluded under ERISA". The DCP, however, was not disclosed in the original bankruptcy schedules. Shortly after the § 341 meeting, the chapter 7 trustee objected, averring that

debtor's interest in the above pension plan was not excluded from the bankruptcy estate and was not exemptible by debtor under any theory.

Debtors responded to the objection of the chapter 7 trustee by amending their bankruptcy schedules. Thereafter, they disclosed the existence of debtor Jeffrey Schoeneweis' interest in the DCP and declared that it had an approximate value of $16.000. According to debtors, his interests in the pension plan and in the DCP were excluded from their bankruptcy estate. Alternatively, debtors asserted that the DCP was "marital property" and that each of them could exempt a portion of it pursuant to § 522(d)(5) of the Bankruptcy Code, thereby exempting it in its entirety.

The chapter 7 trustee withdrew his objection to debtors' exclusion of the pension plan from the bankruptcy estate pursuant to § 541(c)(2) of the Bankruptcy Code. He did, however, object to the attempted exclusion of the interest in the DCP from the bankruptcy estate by this same provision and to the exemption of a portion thereof by debtor Cammie Schoeneweis pursuant to § 522(d)(5) of the Bankruptcy Code.

Debtors responded by bringing a "motion for summary judgment" with respect to the objections of the chapter 7 trustee. The recent amendments to 72 P.S. § 4521.2, debtors asserted, made the DCP a spendthrift trust, thereby excluding it from the bankruptcy estate in accordance with § 541(c)(2) of the Bankruptcy Code.

A hearing on the objections of the chapter 7 trustee and debtors' "motion for summary judgment" was held on May 22, 2000.

While the matter still was under advisement, another member of the panel of chapter 7 trustees requested and was granted leave to file an *amicus* brief in support of the position of the chapter 7 trustee. In addition, SERB, by and

through attorneys from the Office of the Attorney General of the Commonwealth of Pennsylvania requested and was granted leave to file an *amicus* brief in support of debtors' position.

A second hearing was held on September 22, 2000, to give these *amici* an opportunity to argue their respective positions. Although we had anticipated that SERB would notify and formally represent to the Attorney General of the Commonwealth of Pennsylvania that the constitutionality of portions of 72 P.S. § 4521.2 had been called into question, the Attorney General, as an officer of the Commonwealth, did not participate.

In a memorandum opinion and order issued on November 9, 2000, we determined that the DCP was not excluded from the bankruptcy estate by § 541(c)(2) because those portions of 72 P.S. § 4521.2 which declared the DCP to be a spendthrift trust were in violation of the Pennsylvania Constitution and therefore were unenforceable. In addition, we determined that debtor Jeffrey Schoeneweis was permitted to utilize § 522(d)(5) of the Bankruptcy Code to exempt a portion of his interest in the DCP but that debtor Cammie Schoeneweis was not permitted to do so. Out of an abundance of caution, we directed the chapter 7 trustee to give notice of our decision to the Attorney General of Pennsylvania and gave the Attorney General thirty days thereafter to intervene and to request reconsideration of our decision.

Debtors did not appeal the order of November 9, 2000. In addition, the Attorney General of Pennsylvania did not file a motion to intervene or for reconsideration of the order. That order became final and the questions answered appear to be the law of the case and binding upon the participants.

On February 25, 2001, the chapter 7 trustee commenced the above adversary action against debtors, SERB, and the board members of SERB. The chapter 7 trustee asserts in Count I of the complaint that the interest of Jeffrey Schoeneweis in the DCP is property of the bankruptcy estate and, pursuant to § 542 of the Bankruptcy Code, requests an order directing SERB to turn over to the chapter 7 trustee the proceeds representing debtor's interest in the DCP. He alleges in Count II that the transfer of the funds belonging to Jeffrey Schoeneweis into the DCP within one year of the bankruptcy filing was fraudulent for purposes of § 548 of the Bankruptcy Code and seeks to avoid and to recover the transfers for the bankruptcy estate.

SERB responded by bringing a motion to dismiss the complaint on May 21, 2001. According to SERB, the Eleventh Amendment prohibits this court from exercising jurisdiction over SERB because it is an alter ego or arm of the Commonwealth of Pennsylvania.

A hearing on SERB's motion and the opposition thereto of the chapter 7 trustee was held on June 20, 2001.

### DISCUSSION

SERB maintains that it is an alter ego or arm of the Commonwealth of Pennsylvania and, as such, is immune from the present lawsuit under the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment provides as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment is understood not so much for what it says as for the presupposition which it confirms: that each State is a sovereign entity in our federal system and immunity to suit by an individual absent the consent of the sovereign is inherent in the concept of sovereignty. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996). Federal jurisdiction over such lawsuits in the absence of consent by the State was not contemplated by the United States Constitution when the judicial power of the United States was established. *Id.*

▮ Its text notwithstanding, the Eleventh Amendment immunizes an unconsenting state from suits brought in federal court not only by citizens of another state, but also by its own citizens. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). It also bars such suits brought in federal court even though the state is not named as a party defendant if the state is the real, substantial party in interest. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). The Eleventh Amendment also applies when a named defendant is an alter ego or arm of a state. *Peters v. Delaware River Port Authority,* 16 F.3d 1346, 1350 (3d Cir.), *cert. denied,* 513 U.S. 811, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994).

▮ The question whether an entity is an alter ego or arm of a state in a given case must be answered in the affirmative *before* the bar of the Eleventh Amendment applies. *Urbano v. Board of Managers,* 415 F.2d 247, 250 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970). If the answer to the question is in the negative, our inquiry need not proceed any further.

Whether an entity is an alter ego or arm of a state for Eleventh Amendment purposes is a question of federal rather than state law. *Christy v. Pennsylvania Turnpike Commission*, 54 F.3d 1140, 1144 (3d Cir.), *cert. denied*, 516 U.S. 932, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995). The burden of proving that the Eleventh Amendment applies in a particular case lies with the party standing to benefit from its application, in this instance SERB. *Id.*

Three distinct inquiries are involved in determining whether a defendant is an alter ego or arm of a state. They are: (1) whether payment of any judgment in favor of the plaintiff would come from the state's treasury; (2) the status of the entity under state law; and (3) the degree of its autonomy from state regulation. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.), *cert. denied*, 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989).

No single factor is dispositive. *Id.* They are not, however, equal in weight or importance. The answer to the first inquiry is "most important" when determining the status of an entity for Eleventh Amendment purposes. *Bolden v. Southeastern Pennsylvania Transportation Authority*, 953 F.2d 807, 816 (3d Cir.1991), *cert. denied*, 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992); *Fitchik*, 873 F.2d at 659. The "special emphasis" placed upon the first of these inquiries derives from the "central goal" of the Eleventh Amendment: preventing federal court judgments that will have to be paid out of the state's treasury. *Christy*, 54 F.3d at 1145.

### I.) *Payment Of Judgment From State Treasury.*

We are not prepared in light of the present record in this case to conclude at this time that a judgment in favor of the chapter 7 trustee in this adversary action would deplete the treasury of the Commonwealth of Pennsylvania in a manner that is relevant for Eleventh Amendment purposes.

The Commonwealth is authorized to establish eligible DCPs pursuant to § 457 of the United States Revenue Code for employees who perform services for the Commonwealth. 72 P.S. § 4521.2(a).

Compensation deferred under such a plan is not included in the computation of federal income taxes to be withheld but does constitute taxable income for state and local earned income taxes. 72 P.S. §§ 4521.2(e)(5) and (f).

Assets and income deferred by the Commonwealth are held *in trust* in a funding vehicle permitted by § 457 of the Internal Revenue Code for the exclusive benefit of plan participants and their beneficiaries until the funds are distributed to the participant or to a named beneficiary. 72 P.S. § 4521.2(h)(1). All such assets and income are "held in trust ... in a special fund within the State Treasury of which the State Treasurer shall be the custodian". *Id.*

The members of the board of SERB are the trustees of any DCP established by the Commonwealth for its employees. 72 P.S. § 4521.2(h)(2).

Any trust established by the Commonwealth is "declared to be a spendthrift trust". Construal of a participant's plan account as self-settled "shall not cause the plan or account to be treated as other than a spendthrift trust". 72 P.S. § 4521.2(h)(3).

Except as expressly provided by the DCP, any benefit or interest available, any right to receive or direct payments, or any distribution of payments made under the plan "shall not be subject to assignment,

alienation, garnishment, attachment, transfer, anticipation, sale, mortgage, pledge, hypothecation, commutation, execution or levy, whether by voluntary or involuntary act of any interested person". 72 P.S. § 4521.2(h)(4).

It is hornbook law that, as trustee, SERB has bare legal title to the amounts in the account of debtor Jeffrey Schoeneweis in the DCP. As the cestui que trust, debtor Jeffrey Schoeneweis has the beneficial interest therein, which interest is included in his bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).

In addition, a Commonwealth employee must provide services prior to the funds being inserted in the trust. Thereafter, a sum is deducted from the earned salary of the employee and the exact amount is inserted in the trust. Should the employee fail to earn any sums during his employment period, then obviously no sums will be inserted in the trust.

The Eleventh Amendment was an immediate response to fears that "federal courts would force ... [states] to pay their Revolutionary War debts, leading to their financial ruin". *Hess v. Port Authority Trans-Hudson Corporation,* 513 U.S. 30, 39, 115 S.Ct. 394, 400, 130 L.Ed.2d 245 (1994) (citing *Pennhurst,* 465 U.S. at 151, 104 S.Ct. at 935).

Although a judgment in favor of the chapter 7 trustee in this adversary action unquestionably would be satisfied from funds held in the trust account, we are not prepared at this time to conclude on this basis alone that such an "invasion" of the Commonwealth's treasury has occurred and is dispositive when determining whether SERB is an alter ego or arm of the Commonwealth when the beneficial interest in the deferred income resides in debtor Jeffrey Schoeneweis.

The Eleventh Amendment applies to suits brought by private parties in federal court which seek to "impose a liability which must be paid from *public funds* in the State treasury" (emphasis added). *Hafer v. Melo,* 502 U.S. 21, 29, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991) (quoting *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355).

The chapter 7 trustee has brought an action requiring SERB to turn over what is alleged to be property of the bankruptcy estate of debtor Jeffrey Schoeneweis. The equitable interest in the funds in his account in the DCP administered by SERB, we have noted, previously resided in debtor Jeffrey Schoeneweis, not in SERB, and now resides in his bankruptcy estate.

Although these funds are kept in the fisc of the Commonwealth of Pennsylvania, we are not prepared at this stage of the case to conclude on that basis alone that the funds are *public* funds and that requiring SERB to turn them over to the chapter 7 trustee, should he prevail in this case, would result in a depletion of *public* funds. The mere fact that the Commonwealth keeps the funds in a separate account in its treasury does not necessarily entail that they are "public" in the requisite manner. The funds represent compensation earned by debtor Jeffrey Schoeneweis from his employment by the Commonwealth which he elected to defer receiving along with any earnings derived from the investment of the funds.

Our unwillingness to conclude at this time that SERB is an arm of the Commonwealth of Pennsylvania when administering a DCP established for its employees does not preclude the possibility that SERB is an arm of the Commonwealth when it performs some other function. An agency may qualify as an arm of the state when it performs one function but not when it performs another function.

*See Carter v. City of Philadelphia,* 181 F.3d 339, 351 (3d Cir.), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999).

## II.) *Status Of SERB Under State Law.*

The second inquiry involved in determining whether SERB is an alter ego or arm of the Commonwealth of Pennsylvania is whether state law treats it as an independent entity or as a surrogate for the Commonwealth.

Pennsylvania case law indicates that SERB is a surrogate for the Commonwealth. The Commonwealth Court of Pennsylvania, not the highest court in Pennsylvania, concluded after reviewing the statutory provisions which created SERB that it was "sufficiently integrated with the Commonwealth" so as to be shielded from liability under Pennsylvania's doctrine of sovereign immunity. *United Brokers Mortgage Co. v. Fidelity Philadelphia Trust Company,* 26 Pa. Cmwlth. 260, 264, 363 A.2d 817, 820 (1976).

We are satisfied that *United Brokers* remains viable even though it was decided more than a quarter of a century ago and conclude that the Commonwealth Court of Pennsylvania law regards SERB as an arm of the Commonwealth. We will await the decision of the Supreme Court of the Commonwealth of Pennsylvania on this question or the evidence offered at trial in this matter.

## III.) *Autonomy From State Control.*

SERB has presented little, if anything, concerning the degree of autonomy, if any, from Commonwealth control SERB enjoys.

Our own review of relevant statutes indicates that it is not fully autonomous but instead is subject to some control by the Commonwealth. Although it is characterized as an *independent* administrative board, for instance, a majority of the board members of SERB are appointed by the Governor of Pennsylvania. 71 Pa.C.S.A. § 5901(a). Gubernatorial authority over the appointment of board members of an agency lends support to a finding of sovereignty for an agency. *Peters,* 16 F.3d at 1351–52. However, by definition they are (and consider themselves to be) an independent administrative board. They can't have it both ways and we will await the evidence.

## IV.) *Weighing Of The Factors.*

Determining whether SERB is an alter ego or arm of the Commonwealth requires us to consider the answers to the above three general inquiries in their totality. *Bolden,* 953 F.2d at 821.

Although the SERB's status under existing appellate Pennsylvania law and the extent of its autonomy from the Commonwealth might appear to indicate that SERB is an alter ego or arm of the Commonwealth, we are not confident at this stage of the case that these considerations inure to the benefit of SERB. Additionally, the most important consideration—i.e., whether a judgment in favor of the chapter 7 trustee would have to be paid from the Commonwealth's treasury—does not point to a definite conclusion. Should it turn out that any such judgment in reality would not adversely affect the public fisc, a strong case may be made for the conclusion that SERB is not an alter ego or arm of the Commonwealth and therefore is not protected by the Eleventh Amendment.

Such a determination, one way or the other, can be made only after the record in this case has been more fully developed. Consequently, we will deny SERB's motion to dismiss this adversary action at this time.